**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP:22-CR-00229-KC** |
| | § | |
| **JOHN MICHAEL CONNELLY** | § | |
| | § | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, John Michael Connelly (hereinafter "Connelly") by and through his attorney of record, and files this, his Motion to Dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), which charges: Count One - Possession of a firearm and ammunition by an unlawful user of a controlled substance as defined in 21 U.S.C. Sec. 802, in violation of 18 U.S.C. §922(g)(3). (Doc. No. 18). The Court should dismiss the Indictment because §922(g)(3) is unconstitutional under the Second Amendment pursuant to the standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and by the Fifth Circuit in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023); and in support thereof would show the Honorable Court as follows:

**I. BACKGROUND**[1]

---

[1] In setting forth the background, Mr. Connelly provides information for this Court regarding the allegations against him. He does not stipulate to the truth or accuracy of this information.

**1.** On December 28, 2021, law enforcement responded to a call regarding an incident between John Connelly and his neighbor. When officers arrived, they saw John Connelly firing a shotgun at the neighbor's door. Mr. Connelly and his wife were arrested, and their home was searched. Inside the home, officers found several firearms as well as ammunition. They also discovered marijuana and evidence of other drug usage.

**2.** On March 2, 2022, a grand jury returned an Indictment, charging Mr. Connelly with possession of a firearm and ammunition by an unlawful user of a controlled substance, and charged his wife and then co-defendant with the same offense. (Doc. #18).

## II. LEGAL STANDARD

**3.** Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores,* 404 F.3rd 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d)(permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir. 1994)("a pretrial dismissal is essentially a determination that, as a matter of law, the government is

incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores,* 404 F.3d at 325.

### III. LEGAL ARGUMENT

**4.** Section 922(g)(3) is unconstitutional as it violates the protections of the Second Amendment as recently explained by the Supreme Court in *Bruen*, 597 U.S. 1 (2022) and the Fifth Circuit in *Rahimi*, 61 F.4th 443 (5th Cir. 2023).

**5.** Section 922(g)(3) violates the Second Amendment, facially and as applied, because historical traditions do not support prohibiting persons who are accused of being a "user of a controlled substance" from possessing firearms.

**A.    SECTION 922(g)(3) UNCONSTITUTIONAL INFRINGEMENT**

**6.** The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court held in *District of Columbia v. Heller,* 554 U.S. 570, 628 (2008), that the Second Amendment codified an individuals right to possess and carry weapons, explaining that the inherent right of self-defense, particularly in the home is central to the right. *see also McDonald v. City of Chicago*, 561

3

U.S. 742, 767 (2010)(holding "that individual self-defense is the central component of the Second Amendment right.").

**7.** In its recent *Bruen* decision, the Supreme Court declined to adopt a "two-step" framework for analyzing Second Amendment challenges. *Bruen*, 597 U.S. at 17. The Supreme Court held:

> In keeping with Heller, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 17. As held by the Fifth Circuit and this Court, after a facial challenge, the analysis proceeds in two parts. "First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct[.]" *Rahimi*, 61 F.4th at 453 (citing to *Bruen,* 597 U.S. at 17.). "If so, then the 'Constitution presumptively protects that conduct,' and the Government 'must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'" *Rahimi*, 61 F.4th at 453 (citing to *Bruen,* 597 U.S. at 17.). "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified

4

command." *Rahimi*, 61 F.4th at 453-54.(citing to *Bruen,* 597 U.S. at 17.).

**B.    SCOPE OF THE SECOND AMENDMENT**

**8.**    The Second Amendment provides, simply enough:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed. U.S. Const. amend. II.

**9.**    Pursuant to *Bruen*, the Court must consider whether Connelly as an individual can claim protection under the Second Amendment. As discussed in *Heller* and *Rahimi,* "'the people' in the Second Amendment have been interpreted throughout the Constitution to 'unambiguously refer[] to all members of the political community, not an unspecified subset.'" *Rahimi*, 61 F.4th at 451. The Fifth Circuit held in *Rahimi* that, "the Supreme Court has made clear that 'the Second Amendment right is exercised individually and belongs to all Americans,' Heller, 554 U.S. at 581. . .  Rahimi, while hardly a model citizen, is nonetheless among "the people" entitled to the Second Amendment's guarantees, all other things equal. *Rahimi*, 61 F.4th at 453.

**10.**    In *Rahimi*, the Government argued that *Heller and Bruen* only referred to "law-abiding, responsible citizens" in discussing the scope of the Second Amendment. *Rahimi*, 61 F.4th at 451. However, the Fifth Circuit explained in detail the context of "law-abiding, responsible citizens," holding:

> Heller simply uses "law-abiding, responsible citizens" as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." 554 U.S. at 626-27; *accord* Range v. AG United States, 53 F.4th 262, 266 (3d Cir. 2022) (upholding 18 U.S.C. § 922(g)(1), which prohibits firearm possession by convicted felons, because "the people" categorically "excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses"), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023). In other words, Heller's reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders "presumptively" tolerated or would have tolerated. See 554 U.S. at 627, n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). Bruen's reference to "ordinary, law-abiding" citizens is no different.

*United States v. Rahimi*, 61 F.4th 443, 452 (5th Cir. 2023).

**11.** Accordingly, Connelly much like Rahimi "while hardly a model citizen, is nonetheless among 'the people' entitled to the Second Amendment's guarantees, all other things equal." *Rahimi*, 61 F.4th at 453. While Connelly may be suspected of criminal conduct, the Government had not produced any evidence showing Connelly had a prior felony or drug conviction on his record.

6

**12.** Further, Connelly's possession of multiple rifles, firearms, shotgun and ammunition fall within the purview of the Second Amendment. *Id.* at 454. "The Amendment grants him the right 'to keep' firearms, and 'possession' is included within the meaning of 'keep'". *Id*. The types of firearms that Connelly possessed are "in common use" such that they fall within the scope of the Second Amendment. *Id.*

**13.** Having established that the Second Amendment's plain text covers Connelly's conduct as discussed in *Bruen* and *Rahimi*, the Second Amendment presumptively protects Connelly's right to keep the weapons officers discovered in his home. *Id.; see also Bruen*, 597 U.S. 1, 18 (2022).

**14.** Therefore, the "Government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*

**C. GOVERNMENT CANNOT MEET ITS BURDEN**

**15.** "To carry its burden, the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" *Rahimi*, 61 F.4th at 454. The Fifth Circuit found that "[t]he Government need not identify a 'historical twin'; rather, a 'well-established and representative historical analogue'

suffices. *Id.* The Fifth Circuit did clarify that "[a]s to the degree of similarity required, 'analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check.' . . .[C]ourts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." *Id.*

**16.** On the other hand, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster. . . The core question is whether the challenged law and proffered analogue are "relevantly similar." *Id.* Ultimately, "[w]hen the challenged regulation addresses a 'general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. . . Moreover, 'if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.'" *Id.*

**17.** Section 922(g)(3) prohibits possession by a person who unlawfully uses a controlled substance. According to *Bruen* and *Rahimi,* the government clearly cannot meet its burden to show that the Nation's history, particularly around the passage of the

8

Second Amendment, supports firearms restrictions for those who unlawfully used a controlled substance. The history of barring firearm possession by those who unlawfully use a controlled substance is limited and relatively recent. Congress first passed §922(g)(3) in 1968, as the Gun Control Act of 1968, the first time in the Nation's history that Congress enacted such a ban. The Government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second Amendment, particularly where it contradicts the plain language of the text. *see Bruen*, 597 U.S. at 36.

### IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, pursuant to *Bruen* and *Rahimi* John Connelly respectfully requests that the Court dismiss the indictment.

Respectfully submitted,

**JIM DARNELL, P.C.**
310 N. Mesa, Suite 212
El Paso, Texas 79901
Phone: (915)532-2442
Fax:    (915)532-4549


By: /s/ Jim Darnell
    **Jim Darnell**
    Jdarnell@jdarnell.com
    TX State Bar No. 05391250
    NM State Bar No. 148187


**Attorney for John Connelly**


### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2024, a true and correct copy of the foregoing document has been electronically filed via the CM/ECF system.


/s/ Jim Darnell
Jim Darnell